AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
## for the
### District of Columbia

United States of America
v.

Matthew Leland Klein

Defendant

)
)
)
)
)
)
)

Case: 1:21-cr-00237
Assigned To : Moss, Randolph D.
Assign. Date : 3/19/2021
Description: INDICTMENT (B)

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*     Matthew Klein                                                                ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☐ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 371 (Conspiracy)
18 U.S.C. §§ 231(a)(3), 2 (Civil Disorder)
18 U.S.C. §§ 1512(c)(2), 2 (Obstruction of an Official Proceeding)
18 U.S.C. §§ 1361, 2 (Destruction of Property)
18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds)
18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds)

Date:     03/19/2021

City and state:     Washington, D.C.

2021.03.19
14:55:30 -04'00'

*Issuing officer's signature*

Robin M. Meriweather
United States Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| This warrant was received on *(date)* 3/22/2021 , and the person was arrested on *(date)* 3/23/2021 at *(city and state)* Sherwood, OR . | | |

Date:     3/23/2021

*Arresting officer's signature*

PETER A. JACKSON, Special Agent
*Printed name and title*

3:21-mj-00077

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**

**Grand Jury Sworn in on January 8, 2021**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 21-cr-**   1:21-cr-00237 |
| | : | |
| **v.** | : | **GRAND JURY ORIGINAL** |
| | : | |
| **JONATHANPETER ALLEN KLEIN,** | : | **VIOLATIONS:** |
| **(Counts 1, 2, 3, 4, 5, 6)** | : | **18 U.S.C. § 371** |
| | : | **(Conspiracy)** |
| **and** | : | |
| | : | **18 U.S.C. §§ 1512(c)(2), 2** |
| **MATTHEW LELAND KLEIN,** | : | **(Obstruction of an Official Proceeding and** |
| **(Counts 1, 2, 3, 4, 5, 6)** | : | **Aiding and Abetting)** |
| | : | |
| | : | **18 U.S.C. §§ 231(a)(3), 2** |
| **Defendants.** | : | **(Obstruction of Law Enforcement During** |
| | : | **Civil Disorder and Aiding and Abetting)** |
| | : | |
| | : | **18 U.S.C. §§ 1361, 2** |
| | : | **(Destruction of Government Property and** |
| | : | **Aiding and Abetting)** |
| | : | |
| | : | **18 U.S.C. § 1752(a)(1)** |
| | : | **(Entering and Remaining in a Restricted** |
| | : | **Building or Grounds)** |
| | : | |
| | : | **18 U.S.C. § 1752(a)(2)** |
| | : | **(Disorderly Conduct in a Restricted** |
| | : | **Building or Grounds)** |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, on or about the dates

and at or about the times stated below:

Case: 1:21-cr-00237
Assigned To : Moss, Randolph D.
Assign. Date : 3/19/2021
Description: INDICTMENT (B)

## Introduction

### *The 2020 United States Presidential Election and the Official Proceeding on January 6, 2021*

1.      The 2020 United States Presidential Election occurred on November 3, 2020.

2.      The United States Electoral College ("Electoral College") is a group required by the Constitution to form every four years for the sole purpose of electing the president and vice president, with each state appointing its own electors in a number equal to the size of that state's Congressional delegation.

3.      On December 14, 2020, the presidential electors of the Electoral College met in the state capital of each state and in the District of Columbia and formalized the result of the 2020 U.S. Presidential Election: Joseph R. Biden, Jr. and Kamala D. Harris were declared to have won sufficient votes to be elected the next president and vice president of the United States.

4.      On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate ("the Joint Session") convened in the United States Capitol ("the Capitol") to certify the vote of the Electoral College of the 2020 U.S. Presidential Election ("the Electoral College vote").

### *The Proud Boys*

5.      The Proud Boys describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other events, some of which have resulted in violence involving members of the group. There is an initiation process for new members of the Proud Boys, and members often wear black and yellow polo shirts or other apparel adorned with Proud Boys logos to public events.

*Conspirators*

6.    JONATHANPETER ALLEN KLEIN ("J. KLEIN"), is a 21-year-old resident of Oregon. J. KLEIN is a self-identified member of the Proud Boys. J. KLEIN is the brother of MATTHEW LELAND KLEIN.

7.    MATTHEW LELAND KLEIN ("M. KLEIN"), is a 24-year-old resident of Oregon. M. KLEIN is the brother of J. KLEIN.

### The Attack at the U.S. Capitol on January 6, 2021

8.    On December 19, 2020, plans were announced for a Stop the Steal protest event in Washington, D.C. on January 6, 2021, which protest would coincide with Congress's certification of the Electoral College vote.

9.    On December 27, 2020, J. KLEIN notified his employer that he wanted to take time off from work between January 4 and 8, 2021, so that he and his brother could attend the "stop the steal rally in DC."

10.    On December 29, 2020, J. KLEIN and M. KLEIN obtained airline tickets to travel from Portland, Oregon, to Philadelphia, Pennsylvania, on January 4, 2021. The tickets were paid for in cash.

11.    On or before January 5, 2021, J. KLEIN and M. KLEIN traveled from Philadelphia to Washington, D.C.

12.    On January 6, 2021, only authorized individuals with appropriate identification were allowed on the Capitol grounds or inside the Capitol building. The Capitol is secured 24 hours a day by United States Capitol Police ("Capitol Police") and permanent and temporary barriers that restrict access to the Capitol grounds and building.

13.     On January 6, 2021, at 12:45 p.m., a large crowd began to gather outside the Capitol perimeter.

14.     Pedestrian entrances to the Capitol grounds were guarded by Capitol Police. Prominent signs posted on metal barriers at pedestrian entrances and other locations stated, "AREA CLOSED By order of the United States Capitol Police Board."

15.     At 12:53 p.m., a group of people forcibly breached the barriers on the west side of the Capitol and members of the crowd charged past the trampled barriers and onto Capitol grounds.

16.     At 1:00 p.m., the Joint Session convened in the Capitol to certify the Electoral College vote.  Vice President Michael R. Pence, in his constitutional duty as President of the Senate, presided over the Joint Session, and Vice President-elect Harris was also present.

17.     Outside the Capitol, law enforcement struggled to maintain control of the growing crowd that had advanced onto the Capitol grounds.

18.     Crowd members, including J. KLEIN and M. KLEIN, eventually forced their way through, up, and over additional Capitol Police barricades and advanced to the building's exterior façade. Capitol Police officers attempted to maintain order and stop the crowd from entering the Capitol building. Prior to 2:13 p.m., the doors and windows of the Capitol building were locked or otherwise secured.

19.     By 2:13 p.m., crowd members had begun to force entry into the Capitol building by breaking windows and forcing open doors.  The crowd was not lawfully authorized to enter or remain inside the Capitol building, and no crowd member submitted to security screenings or weapons checks by Capitol Police or other security officials. Other crowd members encouraged and otherwise assisted the forced entry, affording J. KLEIN and M. KLEIN the ability to enter the Capitol building.

20.     Shortly after the Capitol had been breached, at 2:20 p.m., members of the House and Senate (including Vice President Pence)—who had withdrawn to separate chambers to resolve an objection—were evacuated from their respective chambers.  The Joint Session was halted while Capitol Police and other law-enforcement officers worked to restore order and clear the Capitol building and grounds of the unlawful occupants.

21.     Later that night, law enforcement regained control of the Capitol building and grounds.  At approximately 8:00 p.m., the Joint Session reconvened, presided over by Vice President Pence, who had remained within the Capitol building in a secure location throughout these events.

22.     In the course of these events, approximately 81 members of the Capitol Police and 58 members of the Metropolitan Police Department were assaulted.  The Capitol suffered millions of dollars in damage—including broken windows and doors, graffiti, and residue from pepper spray, tear gas, and fire extinguishers deployed both by crowd members who stormed the Capitol and by Capitol Police officers trying to restore order.  Additionally, many media members were assaulted and had cameras and other news-gathering equipment destroyed.

## COUNT ONE
### (Conspiracy—18 U.S.C. § 371)

23.     The introductory allegations set forth in paragraphs 1 through 22 are re-alleged and incorporated by reference as though set forth herein.

### The Conspiracy

24.     From as early as January 6, 2021, in the District of Columbia and elsewhere, the defendants,

**JONATHANPETER ALLEN KLEIN** and
**MATTHEW LELAND KLEIN**,

did knowingly combine, conspire, confederate, and agree with each other and others known and unknown, to commit offenses against the United States, namely, (1) to corruptly obstruct, influence, and impede an official proceeding, that is, Congress's certification of the Electoral College vote, and to attempt to do so, in violation of Title 18, United States Code, Section 1512(c)(2) and (2) to obstruct, impede, and interfere with law enforcement officers engaged in the lawful performance of official duties incident to and during the commission of a civil disorder, in violation of Title 18, United States Code, Section 231(a)(3).

### Purpose of the Conspiracy

25.     The purpose of the conspiracy was (1) to corruptly stop, delay, or hinder Congress's certification of the Electoral College vote, and (2) to obstruct and interfere with law enforcement officers engaged in their official duties to protect the Capitol and its occupants from those who had unlawfully advanced onto Capitol grounds.

### Manner and Means

26.     J. KLEIN and M. KLEIN, with others known and unknown, carried out the conspiracy through the following manner and means, among others, by:

   a.   Traveling to Washington, D.C. prior to the January 6 attack;

   b.   Storming past barricades, Capitol Police, and other law enforcement officers;

   c.   Gaining access to and assisting others with gaining access to restricted areas of the Capitol's grounds;

   d.   Entering the Capitol building;

   e.   Forcing open secure exterior doors of the Capitol, which were guarded by law enforcement officers; and

      f.   Interfering with efforts by law enforcement to stop the crowd from gaining access to the Capitol.

### Overt Acts

27.    On January 6, 2021, J. KLEIN and M. KLEIN entered the restricted areas of the Capitol grounds.

28.    At 2:11 p.m., M. KLEIN assisted members of the crowd, who had breached the Capitol's restricted grounds, with using a police barricade to climb a wall and gain access to an external stairwell leading to the Upper West Terrace of the Capitol.

29.    At 2:16 p.m., J. KLEIN entered the Capitol building through a door on the northwest side of the Capitol. J. KLEIN engaged in a celebratory exchange with an identified member of the Proud Boys ("PERSON 1").

30.    At 2:18 p.m., M. KLEIN entered the Capitol building through the same door on the northwest side of the Capitol.

31.    J. KLEIN entered the Capitol Rotunda. While there, J. KLEIN engaged in another celebratory exchange with PERSON 1 during which J. KLEIN greeted PERSON 1 by declaring, "proud of your f***ing boy!"

32.    J. KLEIN and M. KLEIN exited the Capitol. After exiting the Capitol, J. KLEIN and M. KLEIN worked in coordination to forcibly open a secured door on the Capitol's north side. Federal law enforcement officers were visible on the other side of the door while J. KLEIN and M. KLEIN took this action.

33.    When federal law enforcement officers responded to the violent entry, M. KLEIN put on protective goggles.

34.    M. KLEIN then advanced toward the law enforcement officers and used a Gadsden flag affixed to a flagpole to interfere with efforts by law enforcement to disperse the crowd.

(In violation of Title 18, United States Code, Section 371)

## COUNT TWO
### (18 U.S.C. §§ 1512(c)(2), 2—Obstruction of an Official Proceeding and Aiding and Abetting)

35.     Paragraphs 1 through 22 and paragraphs 27 through 34 of this Indictment are re-alleged and incorporated as though set forth herein.

36.     On January 6, 2021, in the District of Columbia and elsewhere, the defendants,

**JONATHANPETER ALLEN KLEIN** and
**MATTHEW LELAND KLEIN**,

attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, and did aid and abet others known and unknown to do the same; that is, J. KLEIN and M. KLEIN unlawfully entered the Capitol grounds or the Capitol building to, and did, stop, delay, and hinder Congress's certification of the Electoral College vote.

(In violation of Title 18, United States Code, Sections 1512(c)(2), 2)

## COUNT THREE
### (18 U.S.C. § 231(a)(3), 2— Obstruction of Law Enforcement During Civil Disorder and Aiding and Abetting)

37.     Paragraphs 1 through 22 and paragraphs 27 through 34 of this Indictment are re-alleged and incorporated as though set forth herein

38.     On January 6, 2021, in the District of Columbia and elsewhere, the defendants,

**JONATHANPETER ALLEN KLEIN and**
**MATTHEW LELAND KLEIN**,

committed and attempted to commit an act to obstruct, impede, and interfere with law enforcement officers lawfully engaged in official duties incident to and during the commission of a civil disorder, and did aid and abet others known and unknown to do the same, and the civil disorder

obstructed, delayed, and adversely affected the conduct and performance of a federally protected function.

(In violation of Title 18, United States Code, Sections 231(a)(3), 2)

## **COUNT FOUR**
### **(18 U.S.C. §§ 1361, 2—Destruction of Government Property and Aiding and Abetting)**

39.     Paragraphs 1 through 22 and paragraphs 27 through 34 of this Indictment are re-alleged and incorporated as though set forth herein.

40.     On January 6, 2021, in the District of Columbia and elsewhere, the defendants,

**JONATHANPETER ALLEN KLEIN** and
**MATTHEW LELAND KLEIN**,

attempted to, and did, willfully injure and commit depredation against property of the United States, and did aid and abet others known and unknown to do so; that is, J. KLEIN and M. KLEIN together and with others known and unknown, aided and abetted others known and unknown to forcibly enter the Capitol and thereby caused damage to the building in an amount more than $1,000.

(In violation of Title 18, United States Code, Sections 1361, 2)

## COUNT FIVE
**(18 U.S.C. § 1752(a)(1)—Entering and Remaining in a Restricted Building or Grounds)**

41.     Paragraphs 1 through 22 and paragraphs 27 through 34 of this Indictment are re-alleged and incorporated as though set forth herein.

42.     On January 6, 2021, within the District of Columbia and elsewhere, the defendants,

**JONATHANPETER ALLEN KLEIN** and
**MATTHEW LELAND KLEIN**,

did unlawfully and knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-Elect were temporarily visiting, without lawful authority to do so.

(In violation of Title 18, United States Code, Section 1752(a)(1))

## COUNT SIX
**(18 U.S.C. § 1752(a)(2)—Disorderly Conduct in a Restricted Building or Grounds)**

43.     Paragraphs 1 through 22 and paragraphs 27 through 34 of this Indictment are re-alleged and incorporated as though set forth herein.

44.     On January 6, 2021, within the District of Columbia and elsewhere, the defendants,

**JONATHANPETER ALLEN KLEIN** and
**MATTHEW LELAND KLEIN**,

did knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-Elect were temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions.

(In violation of Title 18, United States Code, Section 1752(a)(2))

A TRUE BILL

FOREPERSON

CHANNING D. PHILLIPS
ACTING U.S. ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA

SCOTT ERIK ASPHAUG, OSB #833674
Acting United States Attorney
District of Oregon
**PAUL T. MALONEY, OSB #013366**
Assistant United States Attorney
Paul.Maloney@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:21-MJ-00076 and** |
| | **3:21-MJ-00077** |
| **v.** | |
| | **GOVERNMENT'S DETENTION** |
| **JONATHANPETER ALLEN KLEIN and** | **MEMORANDUM** |
| **MATTHEW LELAND KLEIN** | |
| | |
| **Defendants.** | |

The United States of America, plaintiff herein, respectfully submits this memorandum in support of its motion that defendants Jonathanpeter Allen Klein ("J. Klein") and Matthew Leland Klein ("M. Klein") be removed in custody to appear before the U.S. District Court for the District of Columbia and detained pending trial, pursuant to 18 U.S.C. § 3142(e). As described below, there is a statutory presumption of detention in this matter under Section 3142(e)(3)(C). In addition, consideration of each of the factors set forth in Section 3142(g) amply demonstrates that

**Government Detention Memorandum** **Page 1**

Revised March 2018

no condition or combination of conditions will reasonably assure the appearance of the defendants as required and the safety of any other person and the community for the purposes of Section 3142(e)(1).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The defendants were active participants in the January 6th attack on the U.S. Capitol. Surrounded and assisted by a mob of rioters, the defendants joined together to wrench open a secure door on the Capitol's north side. Behind that door, law enforcement officers tasked with protecting the Capitol and its inhabitants prepared to fend off yet another wave of attacks from the unruly crowd. The defendants' actions created a dangerous scenario that directly interfered with law enforcement's efforts to secure the building. That they did so as part of a second or third wave of attacks--with knowledge of the mayhem that had already unfolded at the Capitol--shows their reckless disregard for others and the danger posed by these two actors.

On March 19, 2021, a grand jury sitting in the District of Columbia returned a six-count indictment charging both defendants with:

(i)    conspiring to violate 18 U.S.C. §§ 1512(c)(2) (obstruction of an official proceeding) and 231(a)(3) (obstruction of law enforcement during a civil disorder) [Count One];

(ii)   violating 18 U.S.C. §§ 1512(c)(2) and 2 [Count Two];

(iii)  violating 18 U.S.C. §§ 231(a)(3) and 2 [Count Three];

(iv)   violating 18 U.S.C. §§ 1361 and 2 (felony destruction of government property in excess of $1,000) [Count Four];

(v)    violating 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted building or grounds) [Count Five]; and

(vi)   violating 18 U.S.C. § 1752(a)(2) (disorderly conduct in a restricted building or grounds) [Count Six].

**Government's Detention Memorandum**                                               **Page 2**

### *The January 6th Attack on the Capitol*

On January 6, 2021, rioters, which included members and leaders of the Proud Boys,[1] physically breached the Capitol in a bid to stop the Congress from carrying out its constitutionally mandated duty of certifying the results of the 2020 Electoral College vote. As result of these events, approximately 81 members of the Capitol Police and 58 members of the Metropolitan Police Department were assaulted. The Capitol suffered millions of dollars in damage—including broken windows and doors, graffiti, and residue from pepper spray, tear gas, and fire extinguishers deployed both by crowd members who stormed the Capitol and by Capitol Police officers trying to restore order. Additionally, many media members were assaulted and had cameras and other news-gathering equipment destroyed.

Moreover, the rioters' conduct did, in fact, cause members of Congress to temporarily suspend the certification of the 2020 Electoral College vote, as they evacuated from their respective chambers, at approximately 2:20 p.m., while the United States Capitol Police ("USCP") and other law-enforcement officers worked to restore order and clear the Capitol building and grounds of the unlawful occupants, including the defendants – depicted in Image 1 below.

Image 1, which taken on January 5, 2021,[2] at the U.S. Supreme Court Building at a rally in support of former President Trump, depicts M. Klein on the left, wearing a backwards red

---

[1] As alleged in the indictment, the Proud Boys describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other events, some of which have resulted in violence involving members of the group. There is an initiation process for new members of the Proud Boys, and members often wear black and yellow polo shirts or other apparel adorned with Proud Boys logos to public events.

[2] Image 1, which was taken by a photographer associated with Getty Images, was broadcast on CNN and a version of the image was used by the FBI to solicit information from the public regarding the identities of the two depicted individuals. The image appears on Getty Images' website and its caption, entitled "Trump Supporters Rally In Freedom Plaza In Washington, DC," states: "Washington, DC – JANUARY 05:

**Government's Detention Memorandum**                                                          **Page 3**

baseball cap, a red, white and blue gaiter, an olive-green jacket, and red and black fingerless

gloves. M. Klein is carrying a uniquely worn and frayed Gadsden flag. J. Klein, on the right, is

showing a hand signal associated with the Proud Boys and wearing a dark colored baseball cap

with the words "Proud Boy," a dark short-sleeve button up shirt with the letters "PB" [i.e., Proud

Boys] in yellow lettering on the right breast and "PDX" [i.e., Portland] in yellow lettering on the

left breast, a yellow long-sleeve shirt, an American flag gaiter, and a strap for what appears to be

a black messenger-style bag or backpack.



**Image 1**

Although Image 1 was taken the day before the January 6th riot, it was valuable in assisting

with the identification and M. Klein and J. Klein and tracking each's conduct as they breached the

Members of the Proud Boys stand for their picture near the U.S. Supreme Court Building during a rally supporting President Donald Trump on January 5, 2021 in Washington, DC. Today's rally kicks off two days of pro-Trump events fueled by President Trump's continued claims of election fraud and a last-ditch effort to overturn the results of before Congress finalizes them on January 6." *See https://www.gettyimages.com/detail/news-photo/members-of-the-proud-boys-stand-for-their-picture-near-the-news-photo/1294713301* (last visited Mar. 21, 2021).

Capitol and assisted and attempted to assist others with doing so. Through USCP, media, and other third-party images and video, the defendants' actions on January 6th have been well-documented. Such conduct on January 6th includes:

- At approximately 2:11 p.m., M. Klein and J. Klein appear on a wall within the restricted area of the Capitol grounds. M. Klein, with goggles on his forehead, is on video assisting others with climbing a police barricade to ascend the wall, which is located next to an external stairway that leads from the Capitol's Lower West Terrace to the Upper West Terrance. Below are still images from such video. A portion of J. Klein appears visible over M. Klein's right shoulder in the second image.





- At approximately 2:16 p.m., J. Klein, with goggles on his forehead, entered the Capitol Building through a doorway which had been forced opened minutes earlier, during the initial breach of the Capitol at approximately 2:13 p.m. After entering the building, J. Klein appeared to engage in a celebratory exchange with an identified member of the Proud Boys ("PERSON 1") and displayed a Proud Boys hand signal.

**Government's Detention Memorandum** **Page 5**

 

 

- At approximately 2:18 p.m., M. Klein entered the Capitol Building through the same door as J. Klein. M. Klein waited in the lobby area, presumably for J. Klein, before heading south further into the Capitol.

  

- At approximately 2:28 p.m., M. Klein exited the Capitol through a window that had previously been damaged by rioters. The area of the window, at the time of M. Klein's exit, had drawn a large law enforcement officer presence.

**Government's Detention Memorandum**                                           **Page 6**



- By approximately 2:29 p.m., J. Klein and his fellow rioters had made their way from the Senate side of the Capitol, through a line of law enforcement officers in the Capitol's Crypt, to the House of Representatives side. They then proceeded up a flight of stairs to the Capitol's Rotunda.

 

- After both defendants left or had been ejected from the Capitol Building and regrouped, they appeared to be determined that the attack on the Capitol continue. The defendants made their way to the Capitol's secure North Side Door. Federal law enforcement officers were visible on the other side of the door. Surrounded and aided by other rioters, the defendants attempted to forcibly open the door. The defendants' efforts were successful, and they were able to wrench open the door.

  Videos of this incident shows that, immediately after the door was breached, J. Klein moved away from the door and M. Klein donned a pair of goggles and stood directly in front of the door, with his Gadsden flag extended, as law enforcement officers sprayed what appears to be oleoresin capsicum (OC) spray, often referred to as pepper spray, directly at M. Klein's face as law enforcement exited the Capitol building and confronted the crowd.

**Government's Detention Memorandum**                                   **Page 7**







The government's evidence also includes, but is not limited to:

- Airline records which show M. Klein and J. Klein traveled from Portland, Oregon, to Philadelphia, Pennsylvania, on January 4, 2021, and returned to Portland from Philadelphia on January 8, 2021. The reservation for this trip was made on or about December 29, 2020, and the tickets were paid for in cash.

- J. Klein's employer's records which indicate that he requested time off from work from January 4 to 8, 2021, because he and his "brother" were "going to stop the steal rally in DC."

- Messages obtained from M. Klein's Instagram account pursuant to a search warrant in which M. Klein, on or about December 29, 2020, asked another user "[…] You going to DC??" When the other user replied that he/she was not and asked if M. Klein was going, M. Klein responded, "Yep! Got the time off and am going with one of my bro's. stoked af."

- Search warrant records from Google which shows that a mobile device associated with J. Klein's gmail.com account was present at various locations in and around the U.S. Capitol building on January 6, 2021, for approximately 2½ hours beginning at 2:19 p.m.[3]

---

[3] A similar record was not found regarding M. Klein's gmail.com account. This can be due to several factors and does not indicate that M. Klein was not present at or within the Capitol.

**Government's Detention Memorandum**                                    **Page 8**

- An image (redacted below) from M. Klein's Instagram account, dated November 18, 2020, of a red Ford F350 truck, bearing Oregon license plate number [xxx]881, with a frayed Gadsden flag that appears similar to the one in Image 1, but with less stains. [Note: On or about November 4, 2020, M. Klein reported to the Newberg-Dundee Police Department that the red Ford F350 truck, with Oregon license plate number [xxx]881 had been vandalized because, M. Klein believed, he had a "Trump" flag on his truck.]



- An image and video from M. Klein's Instagram account, dated December 24, 2020, that appear to show J. Klein wearing the same or similar Proud Boys shirt and hat and U.S. flag gaiter as he is wearing in Image 1, and showing a hand signal associated with the Proud Boys. The image and a still image from the video are below.

 

**Government's Detention Memorandum**                                    **Page 9**

- An undated image provided to the FBI from a tipster which appears to show J. Klein at, what appears to be an airport, wearing the same Proud Boys shirt and hat and U.S. flag gaiter, as depicted above and in Image 1, and showing a hand signal associated with the Proud Boys. A portion of this image is below.



- An image (redacted below) from a Facebook page that appears to belong to J. Klein (the URL associated with the contains J. Klein's first and last names), and depicts the red Ford F350 with a worn Gadsden and Trump flag in the back, and a tan Toyota, which, according to state of Oregon records, is registered to M. Klein.



***Additional Information as to the Defendant's Dangerousness***

In addition to the government's evidence that the defendants actively participated in the January 6th attack on the Capitol, there is also evidence that the defendants have participated in one or more Proud Boys events during which they were prepared to engage in and/or did engage in violent conduct. Specifically, according to media reports, on September 7, 2020, a group of approximately 100 supporters of former President Trump, including members of the Proud Boys,

**Government's Detention Memorandum**                                              **Page 10**

traveled to the Oregon capitol building in Salem and clashed with approximately 20 Black Lives Matters protestors. *See Police break up scuffles between demonstrators, arrest two in Oregon's state capitol*, Reuters, https://www.reuters.com/article/us-global-race-protests-portland/police-break-up-scuffles-between-demonstrators-arrest-two-in-oregons-state-capital-idUSKBN25Y17P (last visited Mar 21, 2021).

The events in Salem on September 7, 2020, were captured by photographer whose publicly available images appear to show J. Klein in a camouflage short-sleeve shirt and orange long-sleeves, body armor, an orange gaiter, goggles similar to those depicted above, and armed with a yellow baseball bat and paint ball gun. *See Right Wing Groups Organize Large Car Rally Near Portland, Oregon as Counter to Ongoing Anti-Police Protesters*, David Ryder https://www.photographer-in-seattle.com/right-wing-groups-organize-large-car-rally-near-portland-oregon-as-counter-to-ongoing-anti-police-protesters/ (last visited Mar. 21, 2021). The identification of J. Klein as the person in the orange gaiter was based, in part, on a comparison of facial features – namely, the two moles/blemishes on J. Klein's left cheek and the one mole/blemish on his left temple, which appeared similar to those in J. Klein's December 2020 Oregon driver's license photo.

**Government's Detention Memorandum**                                    **Page 11**







Another image in this series (below) appears to show M. Klein wearing a blue shirt, goggles similar to those depicted above, body armor, and red and black fingerless gloves similar to those in Image 1 and elsewhere above. Close-up images of these gloves, which both have the words "Firm Grip," are also below.



SALEM, OR – SEPTEMBER 07: Proud Boys and other right wing demonstrators pursue counter-protesters after a pro-Trump caravan rally convened at the Oregon State Capitol building on September 7, 2020 in Salem, Oregon. The caravan event, billed as the Oregon For Trump 2020 Labor Day Cruise Rally, began in Clackamas and made its way to the Oregon State Capitol in Salem. (Photo by David Ryder/Getty Images)

 

Another image from this series (below) purports to show the individual believed to be J. Klein chasing a fleeing Black Lives Matter protester, who was ultimately assaulted by the other person in the image. *See Proud boy chases down another BLM supporter, beats them down. Police make arrest*, Sergio Olmos https://twitter.com/MrOlmos/status/1303110704350728193 (last visited Mar. 22, 2021).



SALEM, OR – SEPTEMBER 07: Right wing demonstrators chase a Black Lives Matter protester after a pro-Trump caravan rally convened at the Oregon State Capitol building on September 7, 2020 in Salem, Oregon. The caravan event, billed as the Oregon For Trump 2020 Labor Day Cruise Rally, began in Clackamas and made its way to the Oregon State Capitol in Salem. (Photo by David Ryder/Getty Images)

Other media reporting of the Salem events appears to show J. Klein shooting a paintball gun at an unknown target.

**Government's Detention Memorandum**                                    **Page 13**



On September 26, 2020, the Proud Boys held a rally in Portland at which members of the group's national leadership spoke. While M. Klein was leaving the rally, a member of the Portland Police Bureau (PPB) observed that the truck in which M. Klein was riding had three adult males (including M. Klein) in the bed of the truck. The males appeared to be armed with paintball guns and possess shields. Based on the officer's observations, he "believed the occupants in the bed of the truck were not positioned in a reactive or defensive posture, but were looking to initiate a response from and/or acting violently towards those they perceived to be counter to their ideals."

After stopping the truck, PPB officers recovered five paintball guns, five shields, including a black and yellow shield (i.e., consistent with Proud Boys colors) and a blue shield that displayed the words "Fuck BLM," three baseball bats, and an axe handle. The officers also recovered a loaded Smith & Wesson, 9mm handgun with the slide locked back, from within the truck's passenger compartment, which M. Klein admitted was his firearm. The next set of images show items seized by the PPD (not including the firearm), an image that appears to be J. Klein at the rally with the same distinctive red, white, and blue gaiter as in Image 1, a long sleeve blue shirt, similar to the image from September 7, 2020, and red and black fingerless gloves. The final picture appears to show J. Klein, with his outer shirt removed and with the firearm in the small of his back, with the slide locked back and no magazine at the rally.

**Government's Detention Memorandum**                                                      **Page 14**



As a result of the September 26th traffic stop, M. Klein received misdemeanor citations for unlawful possession of a loaded firearm in public (two counts) and unlawful possession of firearms. The two possession of a loaded firearm in public counts remain pending in Multnomah County, Oregon, and were pending at the time M. Klein engaged in the January 6th attack upon the Capitol.

## II.    DISCUSSION

### A.    Legal Standards.

The Bail Reform Act provides for pretrial detention where "no condition or combination of conditions will reasonably assure" the defendant's appearance or the safety of any person or the community. 18 U.S.C. § 3142(e). The government must establish risk of flight "by a clear preponderance of the evidence." *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that the defendant represents a danger to the community "must be supported by clear and convincing evidence." *Id. See also* 18 U.S.C. § 3142(f).

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f)(2)(B). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986).

The United States moves for detention pursuant to 18 U.S.C. § 3142(e)(3)(C), which provides a rebuttable presumption in favor of detention for an enumerated list of crimes, including destruction of government property, in violation of 18 U.S.C. § 1361.[4]  That rebuttable presumption applies to defendant because 18 U.S.C. § 1361 is specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B), and carries a maximum sentence of ten years in prison.

Once a rebuttable presumption is created, it imposes a burden of production on the defendant to offer contrary credible evidence. See *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). Even if a defendant can rebut the presumption, the presumption does not disappear; it continues to carry evidentiary weight. "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (internal quotations and citation omitted). Other relevant factors include (1) the nature and circumstances of the offense charged, including whether the offense is crime of violence or a Federal crime of terrorism; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties,

---

[4]  The government notes that the district judges of the District of Columbia have uniformly held in Capitol riot cases that the rebuttable presumption applies to defendants charged under Section 1361. *See, e.g.*, *United States v. Nordean*, Case No. 21-MJ-195 (C.J. Howell, March 3, 2021); *United States v. Powell*, Case No. 21-mj-197 (C.J. Howell, February 11, 2021); *see also United States v. Watkins*, Case No. 21-cr-28-3 (J. Mehta, February 26, 2021); *United States v. Bisgnano*, Case No. 21-CR-36 (J. Nichols, February 26, 2021).

employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *Hir*, 517 F.3d at 1086.

The United States also seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(A), because destruction of government property, in violation of 18 U.S.C. § 1361, is a crime of violence. Moreover, when destruction of government property is "calculated to influence or affect the conduct of government by intimidation or coercion," it also qualifies as a federal crime of terrorism. *See* 18 U.S.C. § 2332b(g)(5)(A) and (B).

As described further below, application of the facts in this case to the detention factors set forth in Section 3142(g) demonstrate that pretrial detention is warranted and necessary as to both defendants.

## B.      No Condition or Combination of Conditions Will Reasonably Assure the Defendants' Appearance or the Safety of the Community

### (1)      Nature and Circumstances of the Offense

The circumstances of the offenses charged in this case overwhelmingly support detention. The defendants are charged by indictment with multiple gravely serious crimes that occurred during an attempt to occupy the Capitol to prevent Congress from carrying out its duty of certifying the Electoral College results. Among the things the Court is statutorily required to consider is whether the defendants are charged with any crimes of violence or terrorism. 18 U.S.C. § 3142(g)(1). They are charged with both.

#### a.  Defendants Are Charged with a Federal Crime of Terrorism and a Crime of Violence.

**Government's Detention Memorandum**                                                **Page 17**

Felony destruction of property, as charged in the indictment, is a federal crime of terrorism. 18 U.S.C. § 2332b(g)(5), defines "federal crime of terrorism" as an offense that "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct" and is included in an enumerated list of statutes, which includes 18 U.S.C. § 1361. *See* 18 U.S.C. §§ 2332b(g)(5)(A) & (B). The Grand Jury found probable cause in Count Two of the indictment to believe that the defendants intended to obstruct an official proceeding by committing acts of civil disorder, including unlawfully entering the Capitol grounds or building. As described above, the defendants' determination to "stop the steal" and prevent Congress from performing its lawful duties was made clear by their attempt to forcibly open a secure Capitol door *after* both defendants had already been within the Capitol. Moreover, because 18 U.S.C § 1361 is listed in § 2332b(g)(5)(B), there is a rebuttable presumption that no conditions or combination of conditions can assure the safety of the community or the defendants' appearance as required. *See* 18 U.S.C. § 3142(e)(3)(B).

Felony destruction of government property is also a crime of violence. For purposes of the bail statute, as relevant to these offenses, a crime of violence is defined as "an offense that has an element of the use, attempted use, or threatened use of physical force against the person or property of another," if that crime is punishable by ten years or more in prison. *See* 18 U.S.C. § 3142(f)(1)(A) & 16. Section 1361 of Title 18 of the U.S. Code meets those requirements. It is punishable by ten years if the property damage was greater than $1,000, and its elements include the use of physical force against the property of another. *See United States v. Khatallah*, 316 F. Supp. 2d 207, 213 (D.D.C. 2018) (Cooper, J.) (holding that destruction of government property

under a substantially similar statute, 18 U.S.C. § 1363, satisfies a substantially similar elements-clause statute to qualify as a crime of violence).

### b. The Charges and the Defendant's Actions Are Serious.

The charges in indictment are properly characterized as serious due to the possible statutory penalties; the coordinated and determined nature of the defendants' conduct; the defendants' violent actions, along with their capitalization on others' violence throughout January 6th. The defendants were among the first groups of rioters to enter the Capitol after it was breached at approximately 2:13 p.m. (e.g., J. Klein entered at 2:16 p.m.; M. Klein entered at 2:18 p.m.). Prior to doing so, M. Klein assisted others with ascending a wall to gain access to a stairwell leading to the Capitol's Upper West Terrace. And later that day, unsatisfied with their actions thus far, the defendants, surrounded and assisted by other rioters, joined together to wrench open a secure Capitol door and force law enforcement officers to fend off yet another wave of rioters attempting to gain entry to the Capitol.

As noted above, approximately 139 law enforcement officers were assaulted throughout the attack on the Capitol. The defendants created a dangerous situation in which additional law enforcement officers could have been injured. Though the government is unaware of any officers who were in this instance, such lack of injuries does not mitigate the seriousness of the defendants' actions. That the defendants engaged in such conduct--with knowledge of the mayhem that had already unfolded at the Capitol--shows their reckless disregard for others and the danger they pose.

The defendants' conduct on January 6th demonstrated a flagrant disregard and malice towards the rule of law and a willingness to confront law enforcement officers and use force to

promote their political beliefs. Accordingly, the nature and circumstances of the offenses favor detention.

### (2)    *Weight of the Evidence Against the Defendants*

As described above, the weight of the evidence against both defendants is very strong and consists of, among other things, videos and images of the defendants' conduct on January 6th, travel records, and the defendants' communications. Considering that they are both facing a robust government case against them and the potential period of incarceration each is facing, the defendants have a powerful motivation to flee from the authorities and to forcibly resist their recapture. The evidence is clear, convincing, and compelling. The weight of the evidence heavily favors detention for both defendants.

### (3)    *History and Characteristics of the Defendants*

The defendants' history and characteristics likewise support pretrial detention. Both have demonstrated a preparedness and willingness, if not eagerness, to engage in violence against those with whom they disagree, be it Black Lives Matters supporters or the United States government. The defendants' dress and weapons at the September 7, 2020 event in Salem appears to encapsulate their apparent desire to engage in violence with those holding opinions different than their own.



**Government's Detention Memorandum**                                          **Page 20**

And, as described above, J. Klein was involved with helping to chase down a Black Lives Matter protestor who was then assaulted by the person with whom J. Klein was with. J. Klein was also photographed appearing to shoot paintballs at unidentified targets at the event.

Similarly, with regard to the September 26, 2020 Proud Boys event in Portland, M. Klein appeared to be prepared and equipped for violence (e.g., helmet, body armor, shield, and paintball gun) and was, in fact, armed with a firearm. As described by the officer who observed M. Klein and the others in the back of the truck after the event, the officer "believed the occupants in the bed of the truck were not positioned in a reactive or defensive posture, but were looking to initiate a response from and/or acting violently towards those they perceived to be counter to their ideals." On top of all of this, M. Klein's charges for firearms possession resulting from this incident were pending at the time he participated in January 6th attack on the Capitol.

Finally, the government is unaware of any expression of remorse or contrition by either defendant or any reason why the defendants could not or would not engage in similar behavior again. This factor weighs in favor of detention for both defendants.

### (4)     *Nature and Seriousness of the Danger to Any Person or the Community*

The defendants' above-described conduct on and prior to January 6th demonstrates that they are dangerous powder kegs, who are prepared to forcibly oppose and engage in violence against those with whom they disagree, including the government of the United States. Like the others, this factor weighs in favor of the defendants' detention.

**Government's Detention Memorandum**                                                        **Page 21**

III.    **CONCLUSION**

The statutory presumption of detention for both defendants is appropriate in this matter. Moreover, application of Section 3142(f)(1)'s statutory factors in this case ably prove that no condition or combination of conditions will ensure the appearance of the defendants as required or the safety of any individual or the community. Accordingly, the defendants should be removed to the District of Columbia in custody and detained pending trial.

Dated: March 23, 2021                              Respectfully submitted,

                                                   SCOTT ERIK ASPHAUG
                                                   Acting United States Attorney

                                                   */s/ Paul T. Maloney*
                                                   PAUL T. MALONEY, OSB #013366
                                                   Assistant United States Attorney

**Government's Detention Memorandum**                              **Page 22**

AO 466A (Rev. 07/16)  Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.  3:21-mj-00077 |
| MATTHEW LELAND KLEIN | ) | |
| | ) | Charging District's Case No.   1:21-cr-00237 |
| _____ | ) | |
| *Defendant* | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*    District of the District of

Columbia                                                                                                    .

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)     a hearing on any motion by the government for detention;

(6)     request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☒     an identity hearing and production of the warrant.

☐     a preliminary hearing.

☐     a detention hearing.

☒     an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled in this district.  I request that any preliminary or detention hearing be held in the prosecuting district, at a time set by that court. *But will likely seek release.*

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:  *March 23, 2021*                           _____*Matt Klein*_____
                                                                            *Defendant's signature*

                                                                 _____*Michelle M Sweet*_____
                                                                            *Signature of defendant's attorney*

                                                                 _____*Michelle Sweet*_____
                                                                            *Printed name of defendant's attorney*

AO 94 (Rev. 06/09) Commitment to Another District

# UNITED STATES DISTRICT COURT
### for the
District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| MATTHEW LELAND KLEIN | ) | Case No.   3:21-mj-00077 |
| | ) | |
| _____ | ) | Charging District's |
| *Defendant* | ) | Case No.   1:21-cr-00237 |

## COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the _____ District of  the District of Columbia ,

*(if applicable)* _____ division.  The defendant may need an interpreter for this language:

_____ .

The defendant:  ☐ will retain an attorney.

☑ is requesting court-appointed counsel.

The defendant remains in custody after the initial appearance.

**IT IS ORDERED:** The United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant.  The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled.  The clerk of this district must promptly transmit the papers and any bail to the charging district.

Date: March 23, 2021

_____
*Judge's signature*

The Honorable John V. Acosta, U.S. Magistrate Judge
*Printed name and title*

CUSTODY,  NRESTRAINT,  TERMINATED,

# U.S. District Court
## District of Oregon (Portland (3))
## CRIMINAL DOCKET FOR CASE #: <u>3:21−mj−00077</u>−1

Case title: USA v. Klein                                         Date Filed: 03/23/2021
Other court case number:  1:21−cr−00237 District of Columbia    Date Terminated: 03/24/2021

Assigned to: Unassigned

**Defendant (1)**

**Matthew Leland Klein**                      represented by   **Michelle M. Sweet**
*TERMINATED: 03/24/2021*                                       Federal Public Defender's Office
                                                               101 SW Main Street
                                                               Suite 1700
                                                               Portland, OR 97204
                                                               503−326−2123
                                                               Fax: 503−326−5524
                                                               Email: michelle_sweet@fd.org
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*
                                                               *Designation: Public Defender or Community*
                                                               *Defender Appointment*

**Pending Counts**                              **Disposition**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**                           **Disposition**

None

**Highest Offense Level
(Terminated)**

None

**Complaints**                                  **Disposition**

18:371.F CONSPIRACY;
18:1512(C)(2),2 OBSTRUCTION
OF AN OFFICIAL
PROCEEDINGS AND AIDING
AND ABETTING; 18:231(a)(3),2
OBSTRUCTION OF LAW

ENFORCEMENT DURING
CIVIL DISORDER AND AIDING
AND ABETTING; 18:3161,2
DESTRUCTION OF
GOVERNMENT PROPERTY
AND AIDING AND ABETTING;
18:1752(a)(1) ENTERING AND
REMAINING IN A
RESTRICTED BUILDING OR
GROUNDS; 18:1752(a)(2)
DISORDERLY CONDUCT IN A
RESTRICTED BUILDING OR
GROUNDS;

**Plaintiff**

**USA**                                    represented by   **Paul T. Maloney**
                                                            U.S. Attorney's Office
                                                            1000 SW Third Avenue
                                                            Suite 600
                                                            Portland, OR 97204
                                                            503–727–1012
                                                            Fax: 503–727–1117
                                                            Email: Paul.Maloney@usdoj.gov
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Designation: Retained*

Email All Attorneys

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/23/2021 | 1 | | Documents Received From Other Court as to Matthew Leland Klein from UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA Case No: 1:21–cr–00237 Initial Appearance is set for 3/23/2021 at 01:30PM in Portland by videoconference before Magistrate Judge John V. Acosta. (schm) (Entered: 03/23/2021) |
| 03/23/2021 | 2 | | **(DOCUMENT FILED UNDER SEAL)**, INDICTMENT LIST by USA as to Matthew Leland Klein (Attachments: # 1 Attachment ARREST WARRANT) (schm) (Additional attachment(s) added on 3/23/2021: # 2 Attachment Arrest Warrant) (schm). (Entered: 03/23/2021) |
| 03/23/2021 | 3 | | Memorandum in Support of Oral Motion for Detention by USA as to Matthew Leland Klein, **(FILED UNDER SEAL)** (schm) (Entered: 03/23/2021) |
| 03/23/2021 | 4 | | **(FILED UNDER SEAL)**Order sealing Indictment B as to Matthew Leland Klein (schm) Modified on 3/23/2021 (schm). (Entered: 03/23/2021) |
| 03/23/2021 | 5 | | Waiver of Preliminary Examination or Hearing pursuant to Rule 5(c)(3) by Matthew Leland Klein (schm) (Entered: 03/23/2021) |
| 03/23/2021 | 6 | | **Minutes of Proceedings:** Initial Appearance pursuant to Rule 5 Proceedings held on 3/23/2021 before Magistrate Judge John V. Acosta as to Matthew Leland |

| | | | |
|---|---|---|---|
| | | | Klein. At the Government's request, the Clerk is directed to unseal this case. Defendant waives an in−person appearance and consents to appear by video from the USMS Lockup. **ORDER** appointing Federal Defender Michelle Sweet to represent defendant for this proceeding. Defendant advised of rights and waived reading of the charges. Defendant waives an identity hearing, production of the warrant, and any preliminary or detention hearing, but will seek release. (Waiver of Rule 5 & 5.1 Hearings to be filed separately.) **ORDER** – Defendant is DETAINED as a risk of flight and danger to the community. Other Court Information: USA v. Matthew Leland Klein 1:21−cr−00237. (Commitment to Another District and Order Requiring Defendant to Appear in he U.S. District Court, District of Columbia via Zoom on 3/26/2021 at 1:00 PM to be filed separately.) Counsel Present by telephone for Government: Paul Maloney. Counsel Present by video for Defendant: Michelle Sweet. Restraint Order: NR. (Court Reporter: Dennis Apodaca) (pjg) (Entered: 03/23/2021) |
| 03/24/2021 | 7 | | Commitment to Another District as to Matthew Leland Klein. Defendant committed to District of Columbia. Original and two certified copies forwarded to U.S. Marshal on 3/24/2021. (schm) (Entered: 03/24/2021) |