**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:21-CR-00237-RDM-2** |
| **MATTHEW LELAND KLEIN,** | |
| **Defendant.** | |

<u>**GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR INSTITUTION OF
CONDITIONS OF PRETRIAL RELEASE**</u>

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully files its Memorandum in Opposition to Defendant Matthew Leland Klein's Motion for Institution of Conditions of Pretrial Release.

The defendant and his brother, co-defendant Jonathanpeter Allen Klein ("J. Klein"), were active participants in the January 6th attack on the U.S. Capitol. Surrounded and assisted by a mob of rioters, the defendant and his co-defendant joined together to wrench open a secure door on the Capitol's north side. Behind that door, law enforcement officers tasked with protecting the Capitol and its inhabitants prepared to fend off yet another wave of attacks from the unruly crowd. The defendant's actions created a dangerous scenario that directly interfered with law enforcement's efforts to secure the building. That the defendant did so as part of a second or third wave of attacks--with knowledge of the mayhem that had already unfolded at the Capitol--shows his reckless disregard for others and the danger posed by the defendant. *See, e.g., United States v. Munchel*, ---- F.3d ----, 2021WL1149196, *8 (D.C. Cir. 2021) ("In our view, those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired,

planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others had cleared the way.").

The defendant's motion should be denied, and he should continue to be detained pending trial, pursuant to 18 U.S.C. § 3142(e). As described below, there is a statutory presumption of detention in this matter under Section 3142(e)(3)(C). In addition, consideration of each of the factors set forth in Section 3142(g) amply demonstrates that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community for the purposes of Section 3142(e)(1).

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

On March 19, 2021, the defendant and co-defendant J. Klein were charged by indictment with:

> (i)    conspiring to violate 18 U.S.C. §§ 1512(c)(2) (obstruction of an official proceeding) and 231(a)(3) (obstruction of law enforcement during a civil disorder) [Count One];
>
> (ii)   violating 18 U.S.C. §§ 1512(c)(2) and 2 [Count Two];
>
> (iii)  violating 18 U.S.C. §§ 231(a)(3) and 2 [Count Three];
>
> (iv)   violating 18 U.S.C. §§ 1361 and 2 (felony destruction of government property in excess of $1,000) [Count Four];
>
> (v)    violating 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted building or grounds) [Count Five]; and
>
> (vi)   violating 18 U.S.C. § 1752(a)(2) (disorderly conduct in a restricted building or grounds) [Count Six].

On March 23, 2021, the defendant was arrested in the District of Oregon and had an initial appearance before Magistrate Judge John V. Acosta, who ordered that the defendant be detained as both a risk of flight and a danger to the community. On April 9, 2021, the defendant filed his Motion for Institution of Conditions of Pretrial Release. Dkt. 13.

### The January 6th Attack on the Capitol

On January 6, 2021, rioters, which included members and leaders of the Proud Boys,[1] physically breached the Capitol in a bid to stop Congress from carrying out its constitutionally mandated duty of certifying the results of the 2020 Electoral College vote. As result of these events, approximately 81 members of the Capitol Police and 58 members of the Metropolitan Police Department were assaulted. The Capitol suffered millions of dollars in damage—including broken windows and doors, graffiti, and residue from pepper spray, tear gas, and fire extinguishers deployed both by crowd members who stormed the Capitol and by Capitol Police officers trying to restore order. Additionally, many media members were assaulted and had cameras and other news-gathering equipment destroyed.

Moreover, the rioters' conduct did, in fact, cause members of Congress to temporarily suspend the certification of the 2020 Electoral College vote, as they evacuated from their respective chambers, at approximately 2:20 p.m., while the United States Capitol Police ("USCP") and other law-enforcement officers worked to restore order and clear the Capitol building and grounds of the unlawful occupants, including the defendant and his co-defendant – depicted in Image 1 below.

Image 1, which taken on January 5, 2021,[2] at the U.S. Supreme Court Building at a rally in support of former President Trump, depicts the defendant on the left, wearing a backwards red

---

[1] As alleged in the indictment, the Proud Boys describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other events, some of which have resulted in violence involving members of the group. There is an initiation process for new members of the Proud Boys, and members often wear black and yellow polo shirts or other apparel adorned with Proud Boys logos to public events.

[2] Image 1, which was taken by a photographer associated with Getty Images, was broadcast on CNN and a version of the image was used by the FBI to solicit information from the public regarding the identities of the two depicted individuals. The image appears on Getty Images' website and its caption, entitled "Trump

baseball cap, a red, white and blue gaiter, an olive-green jacket, and red and black fingerless gloves. The defendant is carrying a uniquely worn and frayed Gadsden flag. Co-defendant J. Klein, on the right, is showing a hand signal associated with the Proud Boys and wearing a dark colored baseball cap with the words "Proud Boy," a dark short-sleeve button up shirt with the letters "PB" [i.e., Proud Boys] in yellow lettering on the right breast and "PDX" [i.e., Portland] in yellow lettering on the left breast, a yellow long-sleeve shirt, an American flag gaiter, and a strap for what appears to be a black messenger-style bag or backpack.



**Image 1**

Although Image 1 was taken the day before the January 6th riot, it was valuable in assisting with identifying the defendant and his co-defendant and tracking each's conduct as they breached the Capitol and assisted and attempted to assist others with doing so. Through USCP, media, and

---

Supporters Rally In Freedom Plaza In Washington, DC," states: "Washington, DC – JANUARY 05: Members of the Proud Boys stand for their picture near the U.S. Supreme Court Building during a rally supporting President Donald Trump on January 5, 2021 in Washington, DC. Today's rally kicks off two days of pro-Trump events fueled by President Trump's continued claims of election fraud and a last-ditch effort to overturn the results of before Congress finalizes them on January 6." *See https://www.gettyimages.com/detail/news-photo/members-of-the-proud-boys-stand-for-their-picture-near-the-news-photo/1294713301* (last visited Mar. 21, 2021).

other third-party images and video, the defendant's actions on January 6th have been well-documented. Such conduct on January 6th includes:

- At approximately 2:11 p.m., the defendant and J. Klein appear on a wall within the restricted area of the Capitol grounds. The defendant, with goggles on his forehead, is on video assisting others with climbing a police barricade to ascend the wall, which is located next to an external stairway that leads from the Capitol's Lower West Terrace to the Upper West Terrance. Below are still images from such video. A portion of J. Klein appears visible over defendant's right shoulder in the second image.



- At approximately 2:16 p.m., J. Klein, with goggles on his forehead, entered the Capitol Building through a doorway which had been forced opened minutes earlier, during the initial breach of the Capitol at approximately 2:13 p.m.



 

- At approximately 2:18 p.m., the defendant entered the Capitol Building through the same door as J. Klein. The defendant waited in the lobby area, presumably for J. Klein, before heading south further into the Capitol.

  

- At approximately 2:28 p.m., the defendant exited the Capitol through a window that had previously been damaged by rioters. The area of the window, at the time of the defendant's exit, had drawn a large law enforcement officer presence.



- By approximately 2:29 p.m., J. Klein and his fellow rioters had made their way from the Senate side of the Capitol, through a line of law enforcement officers in the Capitol's Crypt, to the House of Representatives side. They then proceeded up a flight of stairs to the Capitol's Rotunda.

 

- After the defendant and his co-defendant left or had been ejected from the Capitol Building and regrouped, they appear to have been determined that the attack on the Capitol continue. The two made their way to the Capitol's secure North Side Door. Federal law enforcement officers were visible on the other side of the door. Surrounded and aided by other rioters, the defendant and his co-defendant attempted to forcibly open the door. Their efforts were successful, and they were able to wrench open the door.

  Videos of this incident show that, immediately after the door was breached, J. Klein moved away from the door and the defendant donned a pair of goggles and stood directly in front of the door, with his Gadsden flag extended in an offensive position, as law enforcement officers sprayed what appears to be oleoresin capsicum (OC) spray, often referred to as pepper spray, directly at the defendant's face as law enforcement exited the Capitol building and confronted the crowd.

 



The government's evidence also includes, but is not limited to:

- Airline records which show the defendant and his co-defendant traveled from Portland, Oregon, to Philadelphia, Pennsylvania, on January 4, 2021, and returned to Portland from Philadelphia on January 8, 2021. The reservation for this trip was made on or about December 29, 2020, and the tickets were paid for in cash.

- Employer records for J. Klein indicate that he requested time off from work from January 4 to 8, 2021, because he and his "brother" were "going to stop the steal rally in DC."

- Messages obtained from the defendant's Instagram account pursuant to a search warrant in which the defendant, on or about December 29, 2020, asked another user "[…] You going to DC??" When the other user replied that he/she was not and asked if the defendant was going, the defendant responded, "Yep! Got the time off and am going with one of my bro's. stoked af."

- Search warrant records from Google which show that a mobile device associated with J. Klein's gmail.com account was present at various locations in and around the U.S. Capitol building on January 6, 2021, for approximately 2½ hours beginning at 2:19 p.m.[3]

- Search warrant records from Google containing information associated with J. Klein's gmail.com account, including images that appear to be backup WhatsApp files from a mobile device.[4] Such files included:

  o An image file dated January 4, 2021 (redacted and clipped below), of, what appears to be, a "selfie" of J. Klein wearing the same clothing as in Image 1 (above) in a

---

[3] A similar record was not found regarding the defendant's gmail.com account. Similarly, records obtained through a search warrant served on Verizon indicate that J. Klein's known cellular telephone number was identified as having utilized a cell site consistent with providing service to a geographic area that includes the interior of the U.S. Capitol building on January 6, 2021. Similar cell site usage by the defendant's known telephone number was not identified. The failure of the defendant's known gmail.com account and cellular telephone number to appear in these records does not mean the defendant was not present at or within the Capitol.

[4] WhatsApp is a software application which, among other things, allows users to send messages, including images, to other WhatsApp users through devices such as a smart phone or tablet computer. WhatsApp also permits users to backup data to Google Drive.

public bathroom mirror, displaying a Proud Boys signal. (As described above, airline records show that the defendant and J. Klein traveled from Portland to Philadelphia on January 4, 2021.)



o  An image file dated November 1, 2020 (redacted below), with J. Klein and others dressed in Proud Boys attire and displaying a Proud Boys hand signal, and a person dressed similar to defendant in Image 1, including a backwards red baseball cap, a red, white and blue gaiter, an olive-green jacket.



○ A related image dated November 1, 2020 (clipped and redacted below), which appears to show the defendant with his face exposed, wearing an olive-green jacket and backwards red baseball cap, standing next to a soiled yellow Gadsden flag.



- Search warrant records for defendant's Instagram account which included an image file (redacted below), dated November 18, 2020, of a red Ford F350 truck, bearing Oregon license plate number [xxx]881, with a frayed Gadsden flag that appears similar to the one in Image 1, but with less stains. [Note: On or about November 4, 2020, the defendant reported to the Newberg-Dundee (Oregon) Police Department that the red Ford F350 truck, with Oregon license plate number [xxx]881 had been vandalized because, the defendant believed, he had a "Trump" flag on his truck.]



- Image and video files from the defendant's Instagram account dated December 24, 2020, that appear to show J. Klein wearing the same or similar Proud Boys shirt and hat and U.S. flag gaiter as he is wearing in Image 1, and showing a hand signal associated with the Proud Boys. The image and a clipped still image from the video are below.



### *Additional Information as to the Defendant's Dangerousness*

In addition to the government's evidence that the defendant actively participated in the January 6th attack on the Capitol, there is also evidence that the defendant has participated in at least two Proud Boys event during which he was, at the very least, prepared to engage in violent conduct. Specifically, according to media reports, on September 7, 2020, a group of approximately 100 supporters of former President Trump, including members of the Proud Boys, traveled to the Oregon capitol building in Salem and clashed with approximately 20 Black Lives Matters supporters. *See Police break up scuffles between demonstrators, arrest two in Oregon's state capitol*, Reuters, https://www.reuters.com/article/us-global-race-protests-portland/police-break-up-scuffles-between-demonstrators-arrest-two-in-oregons-state-capital-idUSKBN25Y17P (last visited Mar 21, 2021).

The events in Salem on September 7, 2020, were captured by a photographer whose publicly available images appear to show J. Klein in a camouflage short-sleeve shirt and orange long-sleeves, body armor, an orange gaiter, goggles similar to those depicted above, and armed

with a yellow baseball bat and paint ball gun. *See Right Wing Groups Organize Large Car Rally Near Portland, Oregon as Counter to Ongoing Anti-Police Protesters*, David Ryder https://www.photographer-in-seattle.com/right-wing-groups-organize-large-car-rally-near-portland-oregon-as-counter-to-ongoing-anti-police-protesters/ (last visited Mar. 21, 2021).

The identification of J. Klein as the person in the orange gaiter was based, in part, on a comparison of facial features – namely, the two moles/blemishes on J. Klein's left cheek and the one mole/blemish on his left temple, which appeared similar to those in J. Klein's December 2020 Oregon driver's license photo.[5] In addition, during a March 23, 2021 interview with law enforcement, J. Klein identified himself as the person in the orange gaiter in the image on the left below.






Another image in this series (below) appears to show the defendant wearing a blue shirt, goggles similar to those depicted above, body armor, and red and black fingerless gloves similar to those in Image 1 and elsewhere above. Close-up images of these gloves, which both have the words "Firm Grip," are also below.

---

[5] The mole/blemish under J. Klein's left eye is also visible in a closeup image of J. Klein in Image 1.



SALEM, OR – SEPTEMBER 07: Proud Boys and other right wing demonstrators pursue counter-protesters after a pro-Trump caravan rally convened at the Oregon State Capitol building on September 7, 2020 in Salem, Oregon. The caravan event, billed as the Oregon For Trump 2020 Labor Day Cruise Rally, began in Clackamas and made its way to the Oregon State Capitol in Salem. (Photo by David Ryder/Getty Images)




On September 26, 2020, the Proud Boys held a rally in Portland at which members of the group's national leadership spoke. While the defendant was leaving the rally, a member of the Portland Police Bureau (PPB) observed that the truck in which the defendant was riding had three adult males (including the defendant) in the bed of the truck. The males appeared to be armed with paintball guns and possess shields. Based on the officer's observations, he "believed the occupants in the bed of the truck were not positioned in a reactive or defensive posture, but were looking to initiate a response from and/or acting violently towards those they perceived to be counter to their ideals."

After stopping the truck, PPB officers recovered five paintball guns, five shields, including a black and yellow shield (i.e., consistent with Proud Boys colors) and a blue shield that displayed

the words "Fuck BLM," three baseball bats, and an axe handle. The officers also recovered a loaded Smith & Wesson, 9mm handgun with the slide locked back, from within the truck's passenger compartment, which defendant admitted was his firearm. The next set of images show: (i) items seized by the PPD (not including the firearm); (ii) an image that appears to be defendant at the rally with the same distinctive red, white, and blue gaiter as in Image 1, a long sleeve blue shirt, similar to the image from September 7, 2020, and red and black fingerless gloves; and (iii) defendant and others in the back of the truck dressed for battle and armed with a paintball guns (presumably, prior to the traffic stop). The final picture appears to show defendant, with his outer shirt removed and with the firearm in the small of his back, with the slide locked back and no visible magazine at the rally.

 



As a result of the September 26th traffic stop, the defendant received misdemeanor citations for unlawful possession of a loaded firearm in public (two counts) and unlawful possession of firearms. The two possession of a loaded firearm in public counts remain pending in Multnomah County, Oregon, and were pending at the time the defendant engaged in the January 6th attack upon the Capitol.

## II. DISCUSSION

### A. Legal Standards.

The Bail Reform Act provides for pretrial detention where "no condition or combination of conditions will reasonably assure" the defendant's appearance or the safety of any person or the community. 18 U.S.C. § 3142(e). The government must establish risk of flight "by a clear preponderance of the evidence." *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that the defendant represents a danger to the community "must be supported by clear and convincing evidence." *Id*.; *see also* 18 U.S.C. § 3142(f).

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f)(2)(B). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986).

The United States moves for detention pursuant to 18 U.S.C. § 3142(e)(3)(C), which provides a rebuttable presumption in favor of detention for an enumerated list of crimes, including destruction of government property, in violation of 18 U.S.C. § 1361.[6] That rebuttable presumption

---

[6] The government notes that the district judges of the District of Columbia have uniformly held in Capitol riot cases that the rebuttable presumption applies to defendants charged under Section 1361. *See, e.g.*, *United States v. Nordean*, Case No. 21-MJ-195 (C.J. Howell, March 3, 2021); *United States v. Powell*, Case No. 21-mj-197 (C.J. Howell, February 11, 2021); *see also United States v. Watkins*, Case No. 21-cr-28-3 (J. Mehta, February 26, 2021); *United States v. Bisgnano*, Case No. 21-CR-36 (J. Nichols, February 26, 2021).

applies to the defendant because 18 U.S.C. § 1361 is specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B), and carries a maximum sentence of ten years in prison.

Once a rebuttable presumption is created, it imposes a burden of production on the defendant to offer contrary credible evidence. See *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). Even if a defendant can rebut the presumption, the presumption does not disappear; it continues to carry evidentiary weight. "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (internal quotations and citation omitted). Other relevant factors include (1) the nature and circumstances of the offense charged, including whether the offense is crime of violence or a Federal crime of terrorism; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *Hir*, 517 F.3d at 1086.

The United States also seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(A), because destruction of government property, in violation of 18 U.S.C. § 1361, is a crime of violence. Moreover, when destruction of government property is "calculated to influence or affect the conduct of government by intimidation or coercion," it also qualifies as a federal crime of terrorism. *See* 18 U.S.C. § 2332b(g)(5)(A) and (B).

As described further below, application of the facts in this case to the detention factors set forth in Section 3142(g) demonstrate that pretrial detention is warranted and necessary in this case.

**B.     No Condition or Combination of Conditions Will Reasonably Assure the Defendant's Appearance or the Safety of the Community**

*(1)     Nature and Circumstances of the Offense*

The circumstances of the offenses charged in this case overwhelmingly support detention. The defendant is charged by indictment with multiple gravely serious crimes that occurred during an attempt to occupy the Capitol to prevent Congress from carrying out its duty of certifying the Electoral College results. Among the things the Court is statutorily required to consider is whether the defendant is charged with any crimes of violence or terrorism. 18 U.S.C. § 3142(g)(1). He is charged with both.

**a.  The Defendant is Charged with a Federal Crime of Terrorism and a Crime of Violence.**

Felony destruction of property, as charged in the indictment, is a federal crime of terrorism. 18 U.S.C. § 2332b(g)(5), defines "federal crime of terrorism" as an offense that "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct" and is included in an enumerated list of statutes, which includes 18 U.S.C. § 1361. *See* 18 U.S.C. §§ 2332b(g)(5)(A) & (B). The Grand Jury found probable cause in Count Two of the indictment to believe that the defendant intended to obstruct an official proceeding by committing acts of civil disorder, including unlawfully entering the Capitol grounds or building. As described above, the defendant's determination to prevent Congress from performing its lawful duties was made clear by his attempt to forcibly open a secure Capitol door *after* both of the defendant and his co-defendant had already been within the Capitol. Moreover, because 18 U.S.C § 1361 is listed in § 2332b(g)(5)(B), there is a rebuttable presumption that no conditions or

combination of conditions can assure the safety of the community or the defendant's appearance as required. *See* 18 U.S.C. § 3142(e)(3)(B).

Felony destruction of government property is also a crime of violence. For purposes of the bail statute, as relevant to these offenses, a crime of violence is defined as "an offense that has an element of the use, attempted use, or threatened use of physical force against the person or property of another," if that crime is punishable by ten years or more in prison. *See* 18 U.S.C. § 3142(f)(1)(A) & 16. Section 1361 of Title 18 of the U.S. Code meets those requirements. It is punishable by ten years if the property damage was greater than $1,000, and its elements include the use of physical force against the property of another. *See United States v. Khatallah*, 316 F. Supp. 2d 207, 213 (D.D.C. 2018) (Cooper, J.) (holding that destruction of government property under a substantially similar statute, 18 U.S.C. § 1363, satisfies a substantially similar elements-clause statute to qualify as a crime of violence).

### b.  The Charges and Defendant's Actions Are Serious.

The charges in indictment are properly characterized as serious due to the possible statutory penalties; the coordinated and determined nature of the defendant's conduct; the defendant's violent actions, along with his capitalization on others' violence throughout January 6th. The defendant was among the first groups of rioters to enter the Capitol after it was breached at approximately 2:13 p.m. (e.g., the defendant entered at 2:18 p.m.). Prior to doing so, the defendant assisted others with ascending a wall to gain access to a stairwell leading to the Capitol's Upper West Terrace. And later that day, unsatisfied with their actions thus far, the defendant, surrounded and assisted by other rioters, joined with his co-defendant to wrench open a secure Capitol door and force law enforcement officers to fend off yet another wave of rioters attempting to gain entry to the Capitol.

As noted above, approximately 139 law enforcement officers were assaulted throughout the attack on the Capitol. The defendant created a dangerous situation in which additional law enforcement officers could have been injured. Though the government is unaware of any officers who were in this instance, such lack of injuries does not mitigate the seriousness of the defendant's actions. That defendant engaged in such conduct--with knowledge of the mayhem that had already unfolded at the Capitol--shows his reckless disregard for others and the danger he poses.

The defendant's conduct on January 6th demonstrated a flagrant disregard and malice towards the rule of law and a willingness to confront law enforcement officers and use force to promote his political beliefs. Accordingly, the nature and circumstances of the offenses favor detention.

### (2)      Weight of the Evidence Against the Defendant

As described above, the weight of the evidence against the defendant is very strong and consists of, among other things, videos and images of his conduct on January 6th, travel records, and items from the defendant and his co-defendant's online accounts. Considering that he is facing a robust government case against him and the potential period of incarceration he is facing, the defendant has a powerful motivation to flee from the authorities and to forcibly resist his recapture. The evidence is clear, convincing, and compelling. The weight of the evidence heavily favors the defendant's detention.

### (3)      History and Characteristics of the Defendant

The defendant's history and characteristics likewise support pretrial detention. The defendant has demonstrated a preparedness and willingness, if not eagerness, to engage in violence against those with whom he disagrees. The defendant's battledress and weapons at the September 7, 2020 event in Salem and at the September 20, 2020 event in Portland appear to encapsulate his

readiness and apparent desire to engage in violence with those holding opinions different than his own.

 

Similarly, when given the opportunity to create a new point of attack against law enforcement at the Capitol, the defendant and his brother seized the opportunity. And, the defendant engaged in such conduct despite his pending firearm related criminal case in Oregon.

Finally, the government is unaware of any expression of remorse or contrition by the defendant or any reason why the defendant could not or would not engage in similar behavior again. This factor weighs in favor of detention for the defendant.

### (4)     Nature and Seriousness of the Danger to Any Person or the Community

The defendant's above-described conduct on and prior to January 6th demonstrates his dangerousness -- he is prepared to forcibly oppose and engage in violence against those with whom he disagrees, including the government of the United States. Like the others, this factor weighs in favor of the defendant's detention.

## III.   CONCLUSION

The defendant's motion should be denied. He has failed to rebut the statutory presumption of detention in this matter. Moreover, application of Section 3142(f)(1)'s statutory factors in this case ably proves that no condition or combination of conditions will ensure the appearance of the

defendant as required or the safety of any individual or the community. Accordingly, the defendant should continue to be detained pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793


By:     */s/ Christopher K. Veatch*
        CHRISTOPHER K. VEATCH
        IL Bar No. 6276097 (Detailee)
        JASON B.A. MCCULLOUGH
        D.C. Bar No. 998006
        LUKE M. JONES
        VA Bar No. 75053
        Assistant United States Attorneys
        555 4th Street, N.W.
        Washington, D.C. 20530
        (312) 886-3389
        christopher.veatch@usdoj.gov