IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 21-cr-237-2 (RDM) |
| | : | |
| v. | : | 18 U.S.C. § 231(a)(3) (Civil Disorder); |
| | : | 18 U.S.C. § 1752(a)(1) (Entering or |
| MATTHEW LELAND KLEIN, | : | Remaining in a Restricted Building or |
| | : | Grounds) |
| Defendant. | : | |
| | : | |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Matthew Leland Klein, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1.  The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.  On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3.  On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. On December 27, 2020, Jonathanpeter Klein texted his employer that he and his brother, the defendant, Matthew Klein ("Defendant"), "are going to [the] stop the steal rally in D.C. I would like to have the 4th of January 50 the 8th of January off please." Defendant and Jonathanpeter then flew from Portland, Oregon to Philadelphia, Pennsylvania on January 4, 2021.

9. After attending former President Trump's Stop the Steal rally, during which the former President urged his supporters to march to the Capitol building and discussed the former Vice President's role in the certification, Defendant and Jonathanpeter marched towards the U.S. Capitol Building and entered into the Restricted Area of the Capitol Grounds, which was closed to the public that day. As the crowd of rioters amassed on the West Front of the Capitol Building, Defendant climbed up the Northwest Staircase and into the scaffolding that had been erected for the inaugural stage. *See* Images 1-3. From his elevated position, Defendant was in a

position to see officers actively working to stop rioters from advancing on the Capitol building and rioters in the crowd assaulting those officers.

10. While inside the scaffolding, Defendant became separated from Jonathanpeter.

11. Defendant was wearing jeans, an olive-colored jacket, an American flag neck gator, and at different times on January 6, a backwards red hat and/or safety goggles. He carried a yellow Gadsden flag. *See* Image 4.



*Image 1*



*Image 2*



*Image 3*



*Image 4*

12.     The first breach of the Capitol occurred at approximately 2:12 p.m. when rioters broke open windows adjacent to the Senate Wing Door. At approximately 2:18 p.m., Defendant entered the Capitol Building through the Senate Wing Door carrying the Gadsden flag. He then exited the building approximately ten minutes later, at 2:28 p.m., through a broken window next to the Senate Wing Door. *See* Image 5.



*Image 5*

13. After exiting the building, Defendant and other rioters approached another door on the north side of the Building (the "North Door").

14. Law enforcement officers were assembled just inside the North Door in order to prevent a further beach of the building. Defendant joined Jonathanpeter and other rioters in pulling forcefully on the door handle. Through these efforts, Defendant and the other rioters forced the door open. *See* Image 7.



*Image 7*

15.     Immediately after breaching the North Door, Defendant stepped back and pulled his safety goggles over his eyes. *See* Image 8. Defendant took this action because he understood that law enforcement would attempt to resecure the door, including through the use of chemical irritant sprays. After pulling his safety goggles over his eyes, Defendant then positioned himself in front of the North Door to obstruct the officers who were emerging from the building to disperse the rioters. *See* Image 8. Defendant also used his flag to interfere with the officers who were attempting to resecure the door. *See* Image 9.


*Image 8*


*Image 9*

16.   Defendant's conduct, as described above, took place during a civil disorder. The events on the Grounds of the U.S. Capitol and inside the U.S. Capitol Building constituted a "civil disorder," as that term is used in 18 U.S.C. § 231(a)(3), because the events created a public

disturbance involving acts of violence by assemblages of three or more persons, which caused an immediate danger of or resulted in damage or injury to the property or person of another individual.

17. Moreover, the civil disorder on the Grounds of the U.S. Capitol and in the U.S. Capitol building on January 6, 2021, as described in paragraph 16, obstructed, delayed, and adversely affected commerce or the movement of any article or commodity in commerce as those terms are used in Title 18, United States Code, Section 231(a)(3). In particular, the civil disorder adversely affected the sales of Safeway grocery stores within the District of Columbia, whose products travel in interstate commerce before being sold in the District.

18. The civil disorder on the Grounds of the U.S. Capitol described in paragraph 16 also obstructed, delayed, and adversely affected the performance of federally protected functions, including the Secret Service's protection of the Vice President and his immediate family, and the orderly protection of the U.S. Capitol Building by U.S. Capitol Police.

19. All of the law enforcement officers with whom the defendant interacted were lawfully engaged in the lawful performance of their official duties (*i.e.*, engaged in the enforcement of the criminal laws of the United States), incident to and during the commission of this civil disorder, which included assisting the USCP to secure the U.S. Capitol.

### *Elements of the Offense*

20. The parties agree that 18 U.S.C. § 231(a)(3) requires the following elements:

    a. First, the defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with officers assembled at the North Door of the Capitol Building.

    b. Second, at the time of the defendant's act, those officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

c. Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce and the conduct or performance of any federally protected function.

21. The parties agree that Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1) requires the following elements:

a. First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

b. Second, that the defendant did so knowingly.

### *Defendant's Acknowledgments*

22. Defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, Defendant admits that he obstructed officers at the North Door while they were lawfully engaged in the lawful performance of their official duties, incident to and during the commission of a civil disorder that obstructed interstate commerce and the performance of federally protected functions.

23. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he knowingly entered and remained in a restricted building, that is, the U.S. Capitol Building, where the Vice President was or would be temporarily visiting, without lawful authority to do so.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Katherine E. Boyles
KATHERINE E. BOYLES
Assistant U.S. Attorney

        D. Conn. Fed. Bar No. PHV20325
        601 D Street, N.W.
        Washington, D.C. 20579
        (203) 931-5088
        Katherine.boyles@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Matthew Leland Klein, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 4/19/24

_____
Matthew Leland Klein
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 4/19/24

_____
Eugene Gorokhov
Attorney for Defendant