IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | 21CR237-RDM |
| | ) | |
| MATTHEW KLEIN. | ) | |
| | ) | |

## MATTHEW KLEIN'S RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM

Matthew Klein, through counsel, respectfully files his response to the government's sentencing memorandum. For the reasons stated in his sentencing memorandum, and those discussed below, the Court should reject the government's recommended sentence, and impose a sentence of time served in this case.

**A. The Section 4C1.1 Reduction Applies.**

The government argues in its sentencing memorandum that the Zero-Point Offender reduction does not apply. ECF 184, Gov't Sent. Mem., at 8-10. The government's arguments are without merit.

First, the government filed no objections or factual corrections to the initial PSR, which were due onOctober 24, 2024 See PSR at 32 ("The Government did not file the Parties Obligation and Response to Presentence Report, noting any objections. The Government advised Probation on November 4, 2024, that it had no objections to the presentence report."). The initial PSR stated that Mr. Klein was ineligible for the Zero-Point Offender reduction under § 4C1.1(a)(7). See The defense made specific and timely objections to this conclusion, and the final PSR concludes that Mr. Klein is eligible for the reduction. PSR Par. 127a. However, the government made no factual corrections or legal objections to the initial PSR's analysis

1

regarding the applicability of § 4C1.1, and failed to offer the reason it now does, under § 4C1.1(a)(3), a different section that that addressed in the PSR, for its argument that § 4C1.1 does not apply. The government has thus waived this argument. *See, e.g.*, *United States v. Fulford*, 662 F.3d 1174, 1177, N.3 (11th Cir. 2011) (noting that the district court ruled that the government waived argument that sentencing enhancement applied by failing to object to PSR which did not apply the enhancement).[1]

Second, should the Court decide to entertain the government's belated claim, that argument also fails on the merits. The government cites U*nited States v. Pauline Bauer*, 21-cr-386-2 (TNM), Doc. No. 195, at 4, to support its position. The court recounted the following facts from Bauer's trial:

> On January 6, 2020, Bauer traveled to Washington, D.C., to hear Pennsylvania State Senator Doug Mastriano speak at a rally. Tr. of Bench Trial/Verdict (Verdict Tr.) at 6, ECF No. 191. Bauer and her companions waited for Sen. Mastriano to speak on the east plaza of the Capitol.
>
> Id. While she waited, she heard from others in the crowd that Vice President Pence was "going to throw President Trump under the bus." Id. Bauer then saw protesters break through the bike racks marking the restricted area around the Capitol. Id. at 7. Bauer joined the riotous mob streaming towards the Capitol building. Id. She passed police barricades and climbed the Capitol steps. Id. at 7. Despite police officers' attempts to deter her and other rioters, Bauer forced her way through the Columbus doors on the east front of the Capitol. Id.
>
> Bauer then made her way into the Capitol Rotunda. While there, she yelled repeatedly at police officers, demanding that the officers bring out members of Congress, including Speaker Nancy Pelosi. Id. at 8. She screamed at the officers, "Bring them out or we're going in," "They need to hang," "Bring that fucking bitch out here," and "We want Nancy Pelosi! That's who we want. Get them all out here!" Id. Based on these incendiary statements, the Court found that Bauer was "willing to go to great lengths, including

---

[1] While the Court of course has the duty and obligation to independently determine the guidelines, the process of disclosing an initial PSR, with the opportunity to object, is intended to prevent the kind of last-minute arguments the government has made here–requiring a response from defense counsel within less than a day of the sentencing hearing.

2

> breaking numerous laws and threatening physical violence, to stop the certification proceeding." Id.
>
> Bauer also accosted at least one police officer who was attempting to secure the Rotunda. Bauer shoved Officer Travis Coley and yelled, "You back up! Don't even try," when he tried to move her and other rioters away from the hallway leading to Speaker Pelosi's suite. Id. at 8–9. At trial, Officer Coley testified that Bauer went from being "passive aggressive" to "aggressive." Tr. of Trial vol. 1 (Trial Tr.) at 130, ECF No. 189. When he told her to back up, she "push[ed] back against [his] baton" using both hands and told him to "back up." Id.

*Id*. at 4-5.

> Based on this conduct, the court concluded that
>
> Baur's conduct falls within the plain meaning of "violence." Though the use of violence or physical force was not an element of any crime of conviction, the Court noted in its verdict announcement that Bauer "shoved" a police officer. Verdict Tr. at 8. It also credited Officer Coley who testified that Bauer "be[came] aggressive" and pushed against his baton using both hands while telling him to "back up." Trial Tr. at 130.

*Id.* at 5.

Mr. Klein's case is clearly distinguishable from *Bauer*. The court expressly relied on Bauer's making violent physical contact with police officers, namely, shoving and pushing officers, to conclude that she engaged in violence. By contrast, Mr. Klein made no violent contact with police officers or with any other person.

Moreover, judges in this District have found that even in instances where individuals made contact with officers–something that Mr. Klein did not do–their conduct did not constitute "violence" that would disqualify them from receiving the reduction under § 4C1.1. *See, e.g.*, *United States v. Yang*, No. CR 23-100 (JDB), 2024 WL 519962, at *4 (D.D.C. Feb. 9, 2024) (finding, in a case where the defendant briefly grabbed officer's baton, that "[e]ven assuming

3

Yang applied "physical force" insofar as he briefly made physical contact with two officers, the Court finds that this contact was not made with an intent to harm.").

The government also makes the argument that the § 4C1.1 reduction should not apply to January 6 cases as a whole. ECF 184, at 9-10. Multiple judges in this district have rejected this argument. *United States v. Yang*, No. CR 23-100 (JDB), 2024 WL 519962, at *5 (D.D.C. Feb. 9, 2024) (concluding that "The inquiry turns on the actions of the defendant himself or herself, not the actions of others") (citing *United States v. Hernandez,* Crim. A. No. 21-445 (CKK), ECF No. 65, at 6–8 (D.D.C. Jan. 31, 2024); *United States v. Bauer*, Crim. A. No. 21-3862-2 (TNM), 2024 WL 324234, at *4 (D.D.C. Jan. 29, 2024); *United States v. Isaacs*, Crim. A. No. 22-338 (DLF) (D.D.C. Jan. 12, 2024) (oral ruling); *United States v. Parks*, Crim. A. No. 21-411-1 (APM) (D.D.C. Nov. 15, 2023) (oral ruling); *United States v. Eicher*, Crim. A. No. 22-38 (BAH), ECF No. 103, at 45–47 (Sept. 15, 2023) (oral ruling); *see also United States v. Weyer,* Crim. A. No. 22-40 (JEB) (D.D.C. Sept. 14, 2023) (oral ruling) (concluding that § 4C1.1 reduction would "likely" apply)).

The *Yang* court went on to note that "the government has not cited, and the Court is not aware of, any case reaching the opposite conclusion." 2024 WL 519962, at *5. So too here.

For all of these reasons, Mr. Klein's conduct does not constitute violence such that he should not receive a reduction under § 4C1.1. Mr. Klein's correct offense level, as reflected in the final PSR, is 8.

**B. The Government Fails to Address the Multiple Mitigating Factors Uniquely Applicable to Mr. Klein That Support A Downward Variance or a Lenient Sentence Within the Applicable Range of 0-6 Months.**

In its sentencing memorandum, the government purports to address Mr. Klein's background, history, and characteristics. ECF 184, at 11 ("The History and Characteristics of the

4

Defendant."). However, the government fails to address the multiple factors presented in Mr. Klein's sentencing memorandum with respect to their mitigating impact. The government recites some of the facts and ignores others. But the government completely fails to engage with the arguments or authorities showing that a lenient sentence is supported under 3553(a).

The government's failure to address these facts and authorities is significant. In fashioning a fair sentence, the Court must engage in a holistic analysis under Section 3553(a). *United States v. Terrell*, 696 F.3d 1257, 1261 (D.C. Cir. 2012) ("A sentencing judge cannot simply presume that a Guidelines sentence is the correct sentence.") (internal quotations omitted). Instead, the Court must consider all Section 3553(a) factors. And the Court must be guided by the overarching principle that a sentence must be no greater than necessary to achieve the goals of punishment. 18 U.S.C. § 3553(a). The sentencing guidelines are only one factor in this analysis, and they do not account for most or all of the mitigating factors present here that courts–including the Supreme Court–have identified and relied on as mitigating under § 3553(a). Ironically, the government devotes a whole section of its sentencing memorandum to the importance of the sentencing guidelines, ECF 184 at 13, while ignoring the fact that the sentencing guidelines are only one factor for the Court to consider under 3553(a), and are no less important than the defendant's background, history, and characteristics.

Instead, the government urges this Court that to write off the idea that Mr. Klein's history and characteristics warrant leniency (and potentially a variance) based on a prior case that resulted in acquittal on one count by a judge, and dismissal of the other count. ECF 184, at 11 ("Though those charges were ultimately dismissed, Klein's history and characteristics do not warrant a downward variance."). But again, Mr. Klein was never convicted of these charges. The government offers no evidence whatsoever that the court presiding over those charges erred

5

in any way, nor that Mr. Klein actually violated the law. At the same time, and citing no authority whatsoever, the government asks this Court to conclude that these charges are a basis to find that Mr. Klein is not deserving of a downward variance for *any* reason. The Court should reject this approach.

### C. Specific Deterrence Does Not Require a Sentence Greater Than Time Served.

In its argument that specific deterrence requires a sentence of nine months, the government fails to engage with any of the evidence Mr. Klein presented showing that he has already been deterred by the prosecution and the multiple significant consequences of his offense and prosecution. The government ignores Mr. Klein's nearly four years of full compliance with stringent conditions of pretrial release, and the fact that through his conduct, he proved his willingness and ability to follow the law such that pretrial restrictions were eased over time. The government also fails to engage with the fact that four years is a significant period for an individual in his early-mid twenties at the time of the offense to mature and change. The government does not address the punitive impact of Mr. Klein's pretrial confinement, or the significant curtailment of his freedom since 2021. And no less importantly, the government fails to recognize that an individual's expression of remorse—combined with his actions of taking full responsibility by pleading guilty, is itself powerful evidence that he will not need to be further deterred.

Instead of addressing any of these facts, the government merely falls back on the offense itself to argue that Mr. Klein needs to be further deterred. This kind of bootstrapping ignores the fact that specific deterrence is a concept that is forward-looking, and its focus is the risk that the defendant will commit other crimes or pose a danger to the community. *See, e.g.*, *United States v. Seefried*, No. 1:21-CR-00287 (TNM), 2024 WL 1299371, at *5 (D.D.C. Mar. 26, 2024)

(noting "there is little risk of recidivism or need for specific deterrence here"). Here, the government appears to conflate the concept of specific deterrence and general deterrence, which we discuss in the next section.

In sum, Mr. Klein does not pose any risk of recidivism, and therefore a sentence of greater than time served is not warranted based on this factor.

D. **The Need to Avoid Unwarranted Sentencing Disparities and to Achieve General Deterrence Does Not Require a Sentence of Greater Than Time Served.**

The government argues that disparities are sometimes explained by the identity of the sentencing judge. ECF 184 at 14 (citing *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008)). This is, of course, true. As the D.C. Circuit explained: the "Government's Guidelines-centric appellate argument overlooks the twin points that the Supreme Court has stressed in its recent sentencing decisions: The Guidelines now are advisory only, and substantive appellate review in sentencing cases is narrow and deferential." *Gardellini*, 545 F.3d at 1090 (Op. by Kavanaugh, J.). The court affirmed the sentencing judge's downward variance that "rest[ed] on precisely the kind of defendant-specific determinations that are within the special competence of sentencing courts, as the Supreme Court has repeatedly emphasized." *Id.* at 1095. This Court has wide discretion to impose a sentence that is sufficient but not greater than necessary. Before the Court are a panoply of reasons, not accounted for in the guidelines, to sentence Mr. Klein to time served, regardless of the applicable guidelines range.

The government also cites several January 6 cases, arguing that these cases support its requested sentence. However, as explained below, they do not.

***United States v. Hunter Ehmke,*** **21-CR-029 (TSC)**. The government argues that this case, in which the defendant broke multiple windows in the Capitol until he was tackled by the police, and ultimately received a four-month sentence, should guide the Court. But this case is

7

distinguishable in key respects, beyond just the offense conduct. First, unlike Mr. Klein, who was detained under harsh conditions for a period of 53 days after his arrest, Mr. Ehmke was never detained. His sentencing memorandum reflects that he was arrested on January 13, 2021 and the n released. ECF 30–Ehmke Sentencing Memorandum, at 5-6 (citing ECF 8). This is significant because, as noted in Mr. Klein's sentencing memorandum, the National Institute of Justice has recognized that the data shows that the swiftness and certainty of punishment plays a far more significant role than the severity of punishment. See ECF 181, Def. Sent. Mem., at 6 (citing National Institute of Justice, *Five Things About Deterrence*, https://nij.ojp.gov/topics/articles/five-things-about-deterrence ). Second, unlike Mr. Klein, who maintained full compliance with the conditions of pretrial release for nearly four years, Ehmke violated his conditions of pretrial release by attending a gun range, causing his supervising officer to seek revocation of his release conditions. ECF 18–Defense Motion on Pretrial Release Conditions, at 1. Finally, Mr. Ehmke was sentenced in May of 2022, which is approximately 16 months after his crime occurred—a far shorter time than Mr. Klein has been on release. Contrary to the government's argument, *Ehmke* does not provide compelling reasons to sentence Mr. Klein to nine months.

***United States v. Troy Elbert Faulkner,* 21-CR-126 (BAH)**. The government states that in this case, "the defendant kicked in several windowpanes on the west side of the Capitol building. The defendant received a sentence of five months' incarceration, 36 months' supervised release, and $10,560 in restitution, based on a guidelines range of 2-8 months in light of the defendant's Criminal History Category III and offense level 6." The government seeks to distinguish Faulkner's case on the ground that his guidelines were lower, and because Mr. Klein participated in a "coordinated attack" on the North Door. This case is distinguishable for several reasons.

First, as the government notes, Mr. Faulkner had a substantial criminal history. What the government fails to note is that Faulkner had been incarcerated multiple times prior to his actions on January 6. However the government wrote in its sentencing submission in Faulkner's case,

> Faulkner has a lengthy criminal history with numerous criminal convictions and incarcerations from 2004 through 2016. His most recent convictions are for Carrying a Concealed Weapon (felony) in 2011, for which after violating the terms of release, he was sentenced in 2015 to 14 months' incarceration, PSR ¶ 50; Aggravated Menacing, also in 2011, for which he was sentenced to 30 days incarceration with 15 days (suspended), PSR ¶ 51, and Operating a Vehicle Under the Influence Per Se in 2016, for which he was sentenced to 180 days incarceration, with 177 days suspended, PSR ¶ 52

21-CR-126 (BAH), ECF 47–Gov't Sent Mem. in Faulkner, at 13. As discussed in Mr. Klein's sentencing memorandum, shorter sentences are generally sufficient to deter individuals who have previously not faced significant incarceration. This fact distinguishes Mr. Klein's case in a critical way from that of Faulkner. Furthermore, as reflected by the respective restitution amounts, the property damage that Faulkner caused was greater than that which Mr. Klein caused.

***United States v. Peter Krill*, 23-cr-342.** The government claims that Krill's case is similar to that of Mr. Klein, but fails to note the significant differences between the two defendants. The government fails to note that Krill had a lengthy criminal history, incuding crimes of violence, and a significant history of incarceration. But in Krill's case, the government's sentencing memorandum reveals the following critical information:

> Krill has a history of criminal arrests and convictions that goes back several decades. That history, according to the PSR, includes:
>
> • In 1986, Krill was charged with burglary. He was sentenced to 10 days of confinement and three years of probation. PSR ¶ 41.

9

> • In 1991, Krill was charged with cocaine possession. He was sentenced to 139 days of confinement and four years of probation. His probation was revoked. PSR ¶ 42.
>
> • In 1993, Krill, using the alias Michael Kroner, was charged with resisting arrest and possession of controlled substance. Krill was sentenced to 27 days of confinement and one year of probation. His probation was revoked. PSR ¶ 43.
>
> • In 1994, Krill pled guilty to unlawful taking of a 1988 Honda Accord and was sentenced to nine months of confinement. PSR. ¶ 44.
>
> • Also in 1994, Krill was sentenced to 10 days of confinement for shoplifting. PSR ¶ 45.
>
> • In 1995, Krill was charged with disorderly conduct and was sentenced to 60 days of confinement. PSR ¶ 46.
>
> • In 1998, Krill was charged with prohibited weapons / devices and sentenced to 18 months of confinement. PSR ¶ 47.
>
> • Also in 1998, Krill was charged with burglary of a residence and sentenced to four years of confinement. PSR ¶ 48.
>
> • In 2004, Krill was charged with robbery. In 2006, Krill was sentenced to six years of confinement. PSR ¶ 49.

23-cr-342-JEB, ECF 34–Gov't Sent. Mem. as to Krill, at 12-13. Krill's history of multiple incarcerations, including for significant periods of 18 months, four years, and six years, make his case completely different from that of Mr. Klein.

But there is more. Despite his criminal history, Krill illegally possessed firearms and ammunition at the time of his arrest in connection with the January 6 offense. Id. at 13. Additionally, unlike Mr. Klein, Mr. Krill was ordered released only seven days after his arrest on December 15, 2022. *See* Docket entries of 12/15/22 and 12/22/22. Moreover, Krill was over 50 years old at the time of the offense, so his youth and immaturity were not factors as they are here. ECF 34–Gov't Sent. Mem. as to Krill, at 12-13

10

The cases cited by Mr. Klein in his sentencing memorandum are more comparable. The sentencing imposed in those cases show that sentences on par with time served have also been deemed sufficient for purposes of general deterrence.

For all of these reasons, the cases presented by the government do not support a sentence of greater than time served.

### E. A Fine is Not Warranted.

The government goes on at length about the need for restitution, but Mr. Klein has already made full payment for restitution and the special assessments. The government also claims that Mr. Klein has not shown that he has an inability to pay a fine. Mr. Klein provided detailed information to the Probation Officer regarding his financial situation, which clearly reflects that he does not have significant income, lives in a spartan lifestyle in a small home with two of his brothers, and does not have any significant assets to speak of. The government has not objected to the PSR or shown that any of these facts are wrong. Accordingly, Mr. Klein has made a sufficient showing that a fine is not appropriate in this case.

## CONCLUSION

For all of the foregoing reasons, a sentence of time served is sufficient, but not greater than necessary under section 3553(a).

Respectfully submitted,

By: /s/ Eugene Gorokhov

Eugene Gorokhov (D.C. Bar No. 979785)
BURNHAM & GOROKHOV, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
Telephone: (202) 386-6920
eugene@burnhamgorokhov.com

11

**CERTIFICATE OF SERVICE**

I hereby certify that I served this document upon counsel for the government by email and filed it through the ECF system.

/s/ Eugene V. Gorokhov
Counsel for Mr. Klein